# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLOS PITTS, | ) | Case No.  EDCV-07-822-JTL |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## PROCEEDINGS

On July 13, 2000, Carlos Pitts ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Supplemental Security Income ("SSI") benefits.  On July 31, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On August 6, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on January 14, 2008, defendant filed an Answer to the Complaint.  On May 14, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On November 2, 2004, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ["AR"] at 66-68). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 47-51, 54-59). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 60-61).

On October 5, 2006, the ALJ conducted a hearing in San Bernardino, California.[1] (See AR at 246-269). Plaintiff appeared at the hearing with counsel and testified. (AR at 247-266). Sandra M. Fioretti, a vocational expert, also testified at the hearing. (AR at 266-268). On January 9, 2007, the ALJ issued his decision denying benefits to plaintiff. (AR at 11-16). The ALJ determined that plaintiff had the following severe impairments: major depression and a personality disorder with anti-social behavior. (AR at 13). The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Id.). The ALJ concluded that plaintiff's depression failed to meet Section 12.05 of the Listing of Impairments because there was no evidence of moderate or marked limitations in activities of daily living; social functioning; maintaining concentration; persistence or pace or repeated episodes of deterioration or decompensation. (Id.). The ALJ also found plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged hallucinations, lack of concentration, and anti-social behavior not entirely credible. (AR at 14-15). The ALJ concluded that plaintiff "has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk 6 hours of a given 8 hour period and, in addition, is limited to object oriented work, work not requiring contact with the general public, work requiring only superficial, occasional contact with supervisors and work limited to simple, repetitive work tasks involving two to three step instructions." (AR at 14). The ALJ then determined that plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (AR at 16). Thus, the ALJ concluded that

---

[1] The ALJ conducted an initial hearing on August 22, 2006. The ALJ continued the hearing to allow plaintiff to retain counsel. (AR at 238-243).

1  plaintiff was not disabled through the date of the decision.  (AR at 16).  The Appeals Council

2  denied plaintiff's timely request for review of the ALJ's decision.  (AR at 4-6).

3       Thereafter, plaintiff appealed to the United States District Court.

4

5  **PLAINTIFF'S CONTENTIONS**

6       Plaintiff makes the following claims:

7       1.    The ALJ failed to properly consider the opinion of Michael Johanek, M.D.,

8  plaintiff's treating psychiatrist.

9       2.    The ALJ failed to properly consider plaintiff's testimony regarding his symptoms

10  and functional limitations.

11       3.    The ALJ failed to properly consider the lay witness testimony of Dorenda Carr,

12  plaintiff's friend.

13       4.    The ALJ failed to pose a complete hypothetical to the vocational expert.

14

15  **STANDARD OF REVIEW**

16       Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine

17  whether the ALJ's findings are supported by substantial evidence and whether the proper legal

18  standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial

19  evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v.

20  Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

21       Substantial evidence is "such relevant evidence as a reasonable mind might accept as

22  adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the

23  record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r,

24  169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational

25  interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880,

26  882 (9th Cir. 2006).

27  ///

28  ///

1                                            **DISCUSSION**

2     **A.      The Sequential Evaluation**

3             A claimant is disabled under Title II of the Social Security Act if he or she is unable "to

4     engage in any substantial gainful activity by reason of any medically determinable physical or

5     mental impairment which can be expected to result in death or . . . can be expected to last for

6     a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner

7     has established a five-step sequential process to determine whether a claimant is disabled.  20

8     C.F.R. §§ 404.1520, 416.920.

9             The first step is to determine whether the claimant is presently engaging in substantially

10    gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

11    in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

12    137, 141 (1987).   Second, the ALJ must determine whether the claimant has a severe

13    impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment

14    is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the

15    impediment meets or equals one of the listed impairments, the claimant is presumptively

16    disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment

17    prevents the claimant from doing past relevant work.  Parra, 481 F.3d at 746.  If the claimant

18    cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must

19    determine whether the impairment prevents the claimant from performing any other

20    substantially gainful activity.  Id.

21            The claimant bears the burden of proving steps one through four, consistent with the

22    general rule that at all times, the burden is on the claimant to establish his or her entitlement

23    to disability insurance benefits.  Id.  Once this prima facie case is established by the claimant,

24    the burden shifts to the Commissioner to show that the claimant may perform other gainful

25    activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

26    **B.      The ALJ's Consideration of Plaintiff's Treating Psychiatrist's Opinion**

27            Plaintiff contends that the ALJ failed to properly consider the opinion of Michael Johanek,

28    M.D., plaintiff's treating psychiatrist. (Joint Stipulation at 4).  Plaintiff argues that the ALJ failed

1  to provide specific and legitimate reasons for disregarding Dr. Johanek's opinion that plaintiff

2  suffers from mental impairments and limitations that clearly affect his ability to work.  (Joint

3  Stipulation at 4).  Defendant argues that the ALJ did not err in his treatment of Dr. Johanek's

4  opinion because Dr. Johanek offered no opinion for the ALJ to consider.  (Id.).

5      The medical opinion of a treating physician is entitled to special weight.  20 C.F.R. §

6  404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821,

7  830 (9th Cir. 1995) (as amended) (the opinions of treating physicians should be given more

8  weight than the opinions of doctors who do not treat the claimant).  If a treating physician's

9  opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques

10 and is not inconsistent with the other substantial evidence in the record, it will be given

11 controlling weight.  20 C.F.R. § 404.1527.  A finding that a treating physician's opinion is not

12 well supported by medically acceptable clinical and laboratory diagnostic techniques or is not

13 consistent with the other substantial evidence in the record only means that the opinion is not

14 entitled to controlling weight.  Social Security Ruling ("SSR")[2] 96-2p ("A finding that a treating

15 source's medical opinion is not entitled to controlling weight does not mean that the opinion is

16 rejected.").  The opinions rendered by treating physicians are still entitled to deference and

17 must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527, such as the

18 length of the treatment relationship, frequency of examination, and the nature and extent of the

19 treatment relationship.  See SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).  An ALJ may properly

20 reject the opinion of an uncontroverted treating physician only for "clear and convincing"

21 reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  An ALJ may

22 properly disregard the controverted opinion of a treating physician only by setting forth specific

23 and legitimate reasons for doing so that are supported by substantial evidence in the record.

24 Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

25

26      [2] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's
27 regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they
   do not have the force of law, they are nevertheless given deference "unless they are plainly
28 erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
   1989).

On February 7, 2005, B. Griffin, a social worker at the Parole Outpatient Clinic ("POC"), completed an initial evaluation of plaintiff.  (AR at 229).  Mr. Griffin diagnosed plaintiff with a major depressive disorder, adult antisocial behavior and polysubstance dependence, and referred plaintiff to Dr. Johanek.  (AR at 227-229, 232, 234-235).  Over the next seventeen months, Dr. Johanek treated plaintiff for depression, hypertension, stress, sleep deprivation, and lack of concentration.  (See AR at 227-229).

On February 10, 2005, Dr. Johanek completed a primary evaluation of plaintiff.  (AR at 229).  Plaintiff stated that he was scared to take his medications in prison, and complained of depression, difficulty sleeping, and concentrating.  (Id.).  In response to plaintiff's complaints, Dr. Johanek prescribed plaintiff 150 milligrams of Wellbutrin[3], to be taken every morning.  (Id.).  On February 24, 2005, Dr. Johanek noted that plaintiff came in to the appointment with a much better attitude and affect and reported that the Wellbutrin was really helping.  (Id.).  Dr. Johanek refilled plaintiff's prescription for Wellbutrin.  (Id.).  On April 21, 2005, Dr. Johanek noted that plaintiff stated that he was under major stress because of his finances.  (Id.).  In response to plaintiff's complaints, Dr. Johanek told plaintiff to increase his dosage of Wellbutrin and take it in the morning and at noon.  (Id.).  On May 19, 2005, Dr. Johanek noted that plaintiff appeared to be "doing ok," had some trouble with the issues involved in being out of prison, and was set up for a job interview the following day.  (AR at 228).  Plaintiff reported that he had some trouble sleeping and Dr. Johanek prescribed him a very low dose of Trazodone.[4]  (Id.).  On August 4, 2005, Dr. Johanek increased plaintiff's dosage of Trazodone and continued the Wellbutrin.  (Id.).  On December 1, 2005, Dr. Johanek described plaintiff as anxious.  (Id.).  On January 5, 2006, Dr. Johanek noted that plaintiff was having major problems with his marriage, felt threatened by his wife, stated that his disorganization continues to be a major problem and that

---

[3] Wellbutrin is prescribed to help relieve major depression.  Symptoms include a severely depressed mood and loss of interest or pleasure in usual activities accompanied by sleep and appetite disturbances, agitation or lack of energy, feelings of guilt or worthlessness, decreased sex drive, inability to concentrate, and sometimes, suicidal thoughts or behavior. Drugs.com, http://www.drugs.com/pdr/wellbutrin.html

[4] Trazodone is an antidepressant medication.  It affects chemicals in the brain that may become unbalanced and cause depression.  Drugs.com, http://www.drugs.com/mtm/trazodone.html

1   he was unsure if his medication was working. (AR at 228). Dr. Johanek then prescribed 40

2   milligrams of Strattera[5] for plaintiff to take in addition to the Wellbutrin and Trazodone. (Id.).

3   On April 6, 2006, Dr. Johanek refilled plaintiff's medications and noted that plaintiff was having

4   major problems with his wife and facing prison time. (AR at 227). On June 16, 2006, plaintiff

5   complained of weakness, loss of appetite, and weight loss. (Id.). Dr. Johanek increased

6   plaintiff's dosage of Wellbutrin and gave him a short trial of Paxil[6] to be taken every morning.

7   (Id.).

8          In his decision, the ALJ relied on the findings of Adam Cash, Psy.D., who conducted a

9   psychological evaluation of plaintiff on December 21, 2004. (AR at 14; see AR at 194-98). The

10  ALJ noted that Dr. Cash opined that plaintiff's overall effort was questionable. The ALJ noted

11  that Dr. Cash found plaintiff's thinking to be clear, coherent and organized but plaintiff's test

12  scores were much lower than average. (AR at 14; see AR at 194-196). The ALJ also relied

13  on the findings of Barry Gordon Gwartz, M.D., who conducted an internal medicine evaluation

14  of plaintiff on December 22, 2004. (AR at 14-15, 199-204). Dr. Gwartz noted that plaintiff had

15  a history of hypertension, but that plaintiff had no symptoms referable to his hypertension at the

16  time of the evaluation. (AR at 200). The ALJ noted that Dr. Gwartz found no significant

17  objective findings and concluded that plaintiff had no functional limitations. (AR at 15; see AR

18  at 203).

19         As a treating physician, Dr. Johanek's opinion is entitled to weight. See Orn v. Astrue,

20  495 F.3d 625, 631-634 (9th Cir. 2007). In order to properly disregard Dr. Johanek's opinion,

21  the ALJ must set forth specific and legitimate reasons for doing so that are supported by

22  substantial evidence in the record. See Connett, 340 F.3d at 874; Rollins v. Massanari, 261

23  F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even

24

25         [5] Strattera affects chemicals in the brain and nerves that contribute to hyperactivity and impulse
26  control. Strattera is used to treat attention deficit hyperactivity disorder. Drugs.com,
    http://www.drugs.com/mtm/strattera.html

27         [6] Paxil is used to treat panic disorder or posttraumatic stress disorder. It may also be used to
28  treat generalized anxiety disorder or social anxiety disorder. It is also used to treat depression or
    obsessive-compulsive disorder. Drugs.com, http://www.drugs.com/cdi/paxil.html

1  if it is contradicted by the opinions of other doctors, without providing specific and legitimate

2  reasons supported by substantial evidence in the record.") (internal quotation marks omitted).

3  The ALJ can meet this burden by setting out a "detailed and thorough summary of the facts and

4  conflicting clinical evidence, stating his interpretations thereof, and making findings." Cotton

5  v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986).

6         In his decision, the ALJ noted that plaintiff testified that he sees a psychiatrist at his

7  parole office who provides him with medication for depression and hypertension.  (AR at 15;

8  see AR at 256).  However, the ALJ did not explain the weight he gave to Dr. Johanek's opinion.

9  Dr. Johanek treated plaintiff for seventeen months and has a unique perspective on plaintiff's

10 condition. See Orn, 495 F.3d at 633.  Moreover, Dr. Johanek treated plaintiff numerous times

11 after plaintiff's evaluations by Drs. Gwartz and Cash, and Dr. Johanek's case reports were the

12 only reports discussing plaintiff's long-term depression and plaintiff's treatment for depression,

13 concentration problems, hypertension, and anti-social behavior.  In order to properly disregard

14 the opinion of a treating physician, the ALJ must set forth specific and legitimate reasons for

15 doing so that are based on substantial evidence in the record.  Id. at 632.  The ALJ did not

16 discuss Dr. Johanek's opinion in his decision, or explain what weight he gave to his treatment

17 of plaintiff's depression, hypertension, stress, sleep deprivation, and lack of concentration.

18 Accordingly, the ALJ erred in his treatment of Dr. Johanek's opinion.  See id. at 634-35.

19        Defendant argues that Dr. Johanek never rendered an opinion of plaintiff's mental

20 functional limitations for the ALJ to consider.  (Joint Stipulation at 4-5).  However, the primary

21 function of medical records is to promote communication and record keeping for health care

22 personnel, not to provide evidence for disability determinations.  Orn, 495 F.3d at 634.  As

23 plaintiff's treating physician, Dr. Johanek's opinion is entitled to special weight.  See Reddick,

24 157 F.3d at 725.  Even when no other medical evidence contradicts that opinion, the ALJ must

25 present clear and convincing reasons for disregarding the opinion of a treating physician.

26 Montijo v. Sec'y of Health & Human Serv., 729 F.2d 599, 601 (9th Cir. 1984).  In light of Dr.

27 Johanek's seventeen-month treatment relationship with plaintiff, the ALJ should have discussed

28 Dr. Johanek's findings and provided specific and legitimate reasons for discounting his

1  treatment of plaintiff's mental impairments.  Moreover, if the ALJ needed to obtain more specific

2  information regarding Dr. Johanek's opinion, the ALJ should have developed the record further.

3  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (when the evidence is ambiguous,

4  or if the ALJ finds that the record is inadequate to allow for proper evaluation of disability, the

5  ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate

6  inquiry").

7  **C.     The ALJ's Consideration Of Plaintiff's Subjective Complaints**

8         Plaintiff alleges that the ALJ failed to properly consider plaintiff's subjective complaints

9  and assess his credibility.  (Joint Stipulation at 5).  Plaintiff argues the ALJ did not indicate

10 which portions of plaintiff's testimony he found credible, and failed to provide specific evidence

11 that undermines plaintiff's testimony.  (Joint Stipulation at 5-6).  Defendant argues that the ALJ

12 properly provided specific reasons for discrediting plaintiff's subjective complaints and properly

13 rejected plaintiff's credibility.  (Joint Stipulation at 8).

14        Pain of sufficient severity caused by a medically diagnosed "anatomical, physiological,

15 or psychological abnormality" may serve as the basis for a finding of disability.  42 U.S.C. §

16 423(d)(5)(A); see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  To determine

17 whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must

18 determine whether the claimant has presented objective medical evidence of an underlying

19 impairment "which could reasonably be expected to produce the pain or other symptoms

20 alleged." Bunnell v. Sullivan, 947 F.2d 341, 244 (9th Cir. 1991) (en banc).  The claimant need

21 not show that the impairment could reasonably be expected to cause the severity of the

22 symptoms alleged, rather the claimant need only show that it could reasonably produce the

23 degree of symptoms alleged.  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996); see

24 Reddick, 157 F.3d at 722 (claimant's testimony as to the severity of symptoms may not be

25 discredited merely because it is not supported by objective medical evidence).

26        If the ALJ finds that the claimant's impairment could reasonably have caused some

27 degree of the symptom, then, absent evidence of malingering, "the ALJ can reject the

28 claimant's testimony about the severity of his symptoms only by offering specific, clear and

1  convincing reasons for doing so." Smolen, 80 F.3d at 1281.  Moreover, general findings are

2  insufficient; the ALJ must identify what testimony is not credible and what evidence undermines

3  the claimant's complaints.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

4        At the hearing, plaintiff testified that when he was employed in 2004 for three weeks he

5  had trouble working on the assembly line because "[i]t was very complicated.  I couldn't

6  concentrate, I mean, it was just confusing, very confusing to me and [I] couldn't hold the job

7  down, [I] just couldn't keep it."  (AR at 248).  Plaintiff further stated that he has problems

8  reading, understanding, and communicating.  (AR at 250).  Plaintiff testified that he had no

9  income since October 2004 and lives with his mother who provides for him.  (AR at 252).

10 Plaintiff also complained of feeling uncomfortable when around other people.  (AR at 256).  In

11 response to the ALJ's question of how he feels around others in social situations, plaintiff

12 testified "I feel very uncomfortable, even when somebody just laugh [sic] out I kind of have a

13 notion that they could be laughing at me, very nervous, paranoid cause I'm just uneasy like I

14 pretty much am now.  I can't speak right.  I trip over my words.  I'm just, you know, just fidgety

15 all the time."  (Id.).  Plaintiff testified that he has problems concentrating and stated he "can

16 concentrate on something maybe a few seconds."  (Id.).  Plaintiff also indicated that he had

17 anti-social behavior:

18            I have a real bad mood swing . . . My attitude is very bad from just

19            . . . being around people, just certain things said or the way I'm

20            approached.  It's just, it's irritable.  I mean, loud noises upsets me.

21            Loud hearing of kids crying, I just, you know, I pretty much just

22            keep myself closed up and, you know, to myself.  I don't go out.  I

23            don't function with anybody.  I don't hangout.  I don't socialize with

24            anybody.  I rarely speak.

25 (AR at 257).  Plaintiff testified that he has "plenty" of hallucinations, hears voices, and that his

26 condition is getting worse.  (Id.).  In addition, plaintiff testified that the stress from his marriage

27 and the kids was so severe that he had a relapse into drugs.  (AR at 259).  Plaintiff testified that

28 he is treated by a psychiatrist who prescribed him medication for his depression, sleep

1   deprivation, and high blood pressure.  (AR at 259).  Plaintiff stated that he has been taking

2   "psych medications" for about two years and high blood pressure pills for approximately ten to

3   fifteen years.  (AR at 260).

4        In his decision, the ALJ rejected plaintiff's subjective complaints.  (AR at 14).  The ALJ

5   concluded that plaintiff's "medically determinable impairments could reasonably be expected

6   to produce the alleged symptoms, but that plaintiff's statements concerning the intensity,

7   persistence and limiting effects of these symptoms are not entirely credible."  (Id.).  To support

8   his conclusion, the ALJ relied on the opinion of Dr. Cash, who noted that plaintiff's overall effort

9   during the December 21, 2004 examination of plaintiff was questionable.  (AR at 14; see AR

10  at 194).  Dr. Cash opined that plaintiff's mental examination scores were much lower than either

11  his history or presentation would predict.[7]  Dr. Cash found plaintiff's thinking to be clear,

12  coherent, and organized, and, thus, determined that plaintiff's poor test results were invalid.

13  (AR at 194, 196).

14       The ALJ also relied on the opinion of the State Agency psychiatrist, who opined that

15  plaintiff had no medically determinable mental impairment, and on the opinion of Dr. Gwartz,

16  who conducted an internal medicine assessment of plaintiff on December 22, 2004.  The ALJ

17  noted that Dr. Gwartz found "no significant objective findings" and "imposed absolutely no

18  _____

19       [7] Plaintiff's scores on the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") were in the
    Mental Retardation Range.  (AR at 194).  WAIS-III is the standard instrument in the United States for

20  assessing intellectual functioning.  Mental Retardation: Definition, Classification, and Systems of
    Supports (9th ed. 1992).  The WAIS-III is scored by adding together the number of points earned on

21  different subtests, and using a mathematical formula to convert this raw score into a scaled score.
    The test measures an intelligence range from 45 to 144.  The mean score of the test is 100, which

22  means that a person receiving a score of 100 is considered to have an average level of cognitive
    functioning.  A. Kaufman & E. Lichtenbgerger, Essentials of WAIS-III Assessment 60 (1999).

23       Plaintiff obtained a Full IQ score of 62, with a performance IQ of 67, and a verbal IQ of 64.
    (AR at 196).  It is estimated that between one and three percent of the population has an IQ

24  between 70 and 75 or lower, which is typically considered the cutoff IQ score for the intellectual
    function prong of the mental retardation definition.  Kaplan & Sadock's Comprehensive Textbook of

25  Psychiatry 2952 (B. Sadock & V. Sadocks eds. 7th ed. 2000).  Dr. Cash noted plaintiff's scores on
    the Wechsler Memory Scale, Third Edition (WMS-III), a standard test designed to assess learning,

26  memory, and working memory, were much lower than predicted given plaintiff's presentation.  (AR at
    194).  Dr. Cash noted that plaintiff's memory performance was much lower than an individual with

27  serious neurological condition such as Alzheimer's disease or Kosakoff's disease.  (AR at 194-195).
    With regard to plaintiff's Rey 15 Item Memory Test, Dr. Cash was suspicious of malingering or

28  dissimulation of memory impairment.  (AR at 195).

functional limitations regarding plaintiff's mental impairments."  (AR at 14-15;  see AR at 203, 221).  The ALJ also noted that there was an inconsistency between plaintiff's complaints of hypertension and plaintiff's indication that he had no symptoms referable to hypertension during his examination by Dr. Gwartz.  (AR at 14).

Once a claimant produces medical evidence of an underlying impairment, a claimant's testimony regarding his or her subjective symptoms may not be discredited merely because it is unsupported by objective evidence.  Lester, 81 F.3d at 834;  Reddick, 157 F.3d at 722.  Here, the ALJ found that plaintiff had major depression and a personality disorder with anti-social behavior, and that plaintiff's medically determined impairments could reasonably be expected to produce his alleged symptoms.  (AR at 13, 14).  Accordingly, the ALJ cannot discredit plaintiff's alleged symptoms merely because they are unsupported by objective evidence.  The Ninth Circuit has recognized that the degree of symptoms caused by an impairment is subjective and can vary from individual to individual.  Smolen, 80 F.3d at 1282.  Thus, the lack of objective evidence of plaintiff's symptoms is not a proper basis to discredit his subjective complaints.

Next, the ALJ cites to Dr. Gwartz's determination that plaintiff's complaints of hypertension were inconsistent with his lack of treatment and symptoms for hypertension in support of his decision to discredit plaintiff's testimony. (See AR at 14).  In evaluating a claimant's credibility, an ALJ must consider the factor's set forth in SSR 95-5, including a claimant's daily activities and inconsistencies in a plaintiff's testimony or inconsistencies in a plaintiff's testimony and conduct.  See Orn, 495 F.3d at 636;  see also SSR 95-5.  The ALJ relied on Dr. Gwartz's determination that while plaintiff complained of hypertension, plaintiff conceded that he was not using any medication and had no symptoms referable to hypertension.  (AR at 14).  While a claimant's reputation for truthfulness and inconsistencies between testimony and treatment are valid factors to be considered in weighing a claimant's credibility, the ALJ's reliance on the perceived inconsistency as stated by Dr. Gwartz does not constitute a sufficient basis upon which to reject plaintiff's credibility.

///

1    Defendant further argues that plaintiff provided inconsistent statements regarding his

2    mental condition.  (Joint Stipulation at 9).  Defendant notes that while plaintiff asserted that he

3    hears voices and has hallucinations, plaintiff never reported these incidents to either POC staff

4    or the consultative psychiatrist.  (Joint Stipulation at 9).  While the ALJ may have had additional

5    reasons for discrediting plaintiff's subjective complaints, the ALJ must explain his reasons for

6    discrediting plaintiff's subjective complaints in his decision and offer specific and clear reasons

7    for doing so.  See Light, 119 F.3d at 793 (reversible error where ALJ failed to articulate an

8    acceptable reason for discrediting plaintiff's testimony).  Taken as a whole, the ALJ's reasons

9    for discrediting plaintiff's testimony concerning the intensity, persistence, and limiting effects of

10   his symptoms were not sufficiently clear or specific.

11   **D.    The ALJ's Consideration Of The Lay Witness Testimony Of Dorenda Carr**

12   Next, plaintiff alleges that the ALJ erred in failing to discuss the third-party questionnaire

13   completed by Dorenda Carr, plaintiff's friend.  (Joint Stipulation at 11).  Plaintiff argues that the

14   ALJ did not provide germane reasons for rejecting Ms. Carr's testimony regarding plaintiff's

15   functional limitations.  (Id.).  Defendant argues that any failure to properly consider Ms. Carr's

16   testimony is harmless given that her testimony was essentially identical to the testimony in

17   plaintiff's own function reports.  (Joint Stipulation at 13).

18   A person who is in a position to observe a claimant regularly and testifies regarding their

19   symptoms and ability to work is a competent lay witness and an ALJ must consider his or her

20   testimony.  Dodrill, 12 F.3d at 919.  However, an ALJ does not need to meet the impossible

21   burden of mentioning every piece of evidence presented in his or her decision.  Parks v.

22   Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS

23   39731, at *25 (C.D. Cal. Sept. 27, 2005).  Silent disregard of competent lay witness testimony

24   is harmless if the Court can confidently conclude that no reasonable ALJ, when fully crediting

25   the testimony at issue, could reach a different disability determination.  Stout v. Comm'r, 454

26   F.3d 1050, 1056 (9th Cir. 2006).

27   On November 15, 2004, Ms. Carr completed a third-party questionnaire that contained

28   a series of questions regarding plaintiff's daily activities and functional abilities.  (AR at 91-100).

1   Ms. Carr indicated that she has known plaintiff for fifteen years and usually spends about two

2   to three hours a day with him.  (AR at 91).  When asked to describe what plaintiff does from the

3   time he wakes up until he goes to bed, Ms. Carr indicated that plaintiff "[s]howers, changes

4   clothes, eats, basically stays to himself."  (AR at 91).  Ms. Carr indicated that plaintiff has

5   problems sleeping at night.  (AR at 92).  Ms. Carr indicated that plaintiff needs to be reminded

6   of the things that he needs to do throughout the day such as which medications to take.  (AR

7   at 93).  Ms. Carr indicated that plaintiff is capable of cleaning, ironing, and cutting grass, but

8   that he must be constantly told that these things need to be done.  (Id.).

9        When asked how often plaintiff goes outside, Ms. Carr replied, "[A]lmost never [because]

10  he is dysfunctional in society."  (AR at 94).  Ms. Carr further indicated that plaintiff cannot read,

11  follow directions, and write checks.  (Id.).  When asked what the plaintiff's hobbies are, Ms. Carr

12  noted that "he stays to himself, he works out when possible."  (AR at 95).  Ms. Carr indicated

13  that plaintiff rarely interacts with other people, only goes to the store when necessary, attends

14  required appointments, feels uncomfortable around people and, as a result, becomes very

15  nervous and withdrawn.  (Id.).  Ms. Carr also indicated that plaintiff's illness, injuries, or

16  conditions affect his ability to do the following: talking, completing tasks, concentrating,

17  understanding, following instructions, getting along with others, and his memory.  (AR at 96).

18  Moreover, Ms. Carr noted that plaintiff has a very short term memory.  (Id.).  Finally, Ms. Carr

19  indicated that plaintiff does not handle stressful situations well and that plaintiff gets confused

20  with sudden changes.  (AR at 97).

21       The ALJ did not mention Ms. Carr's testimony in his decision.  (See AR at 11-16).

22  Although a court may conclude that even after crediting the lay witness's testimony, a

23  reasonable ALJ would still have reached the same disability determination, see Stout, 454 F.3d

24  at 1056, in this case the Court is unable to do so.  Ms. Carr's testimony was duplicative of

25  plaintiff's testimony in many respects.  If the ALJ had properly rejected plaintiff's testimony, then

26  defendant's argument that the ALJ's subsequent omission of Ms. Carr's testimony was

27  harmless would be more persuasive.  The Court cannot find that even if the ALJ had fully

28

14

1    credited Ms. Carr's testimony, a reasonable ALJ would have reached the same non-disability

2    determination.

3    **E.      The Hypothetical Question Posed To The Vocational Expert**

4           Plaintiff argues that the ALJ erred by omitting plaintiff's limitations of concentration,

5    insight, and judgment from the hypothetical he presented to the vocational expert at the

6    hearing. (Joint Stipulation at 14).  Plaintiff further argues that had the vocational expert, Sandra

7    Fioretti, been aware of these limitations, she may have concluded that plaintiff was unable to

8    sustain employment in any labor market.  (Id.).  Defendant argues that the ALJ presented a

9    complete hypothetical to the vocational expert that included all of plaintiff's limitations that were

10   based on substantial evidence in the record.  (Joint Stipulation at 16).

11          As discussed above, the ALJ failed to properly consider Dr. Johanek's opinion and

12   treatment of plaintiff's mental impairments.  (See supra Section B).  In order for the vocational

13   expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that is

14   based on medical assumptions supported by substantial evidence in the record that reflects

15   each of the claimant's limitations.  Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1996);

16   Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  The hypothetical should be "accurate,

17   detailed and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.

18   1999).

19          Because the ALJ failed to properly evaluate Dr. Johanek's opinion, the Court cannot

20   determine whether the omission of plaintiff's alleged limitations of poor concentration, insight,

21   and judgment from the hypothetical constitutes error.  See Osenbrock, 240 F.3d at 1165.  If the

22   ALJ determined that substantial evidence in the record supports plaintiff's alleged limitations,

23   then they must be included in the hypothetical to the vocational expert in order for the ALJ to

24   properly rely on the vocational expert's response as substantial evidence.  See Gallant, 753

25   F.2d at 1456 (unless there is evidence in the record to adequately support the assumptions in

26   the hypothetical presented to the vocational expert, the opinion of the vocational expert is

27   meaningless).

28   ///

**F.     Remand is Required Remedy Defects in the ALJ's Decision**

        The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

        Here, the Court finds remand appropriate. On remand, the ALJ must fully explain the weight given to the opinions of plaintiff's treating physician, Dr. Johanek and, if necessary, develop the record to the extent the ALJ does not have all the relevant information and/or records from the treating physician. If the ALJ again rejects Dr. Johanek's opinion, the ALJ must set forth specific and legitimate reasons that are supported by substantial evidence in the record. The ALJ must also provide clear and convincing reasons in support of his evaluation of plaintiff's credibility. In addition, if, on remand the ALJ finds that plaintiff suffers from additional limitations, the ALJ must include those limitations in any hypothetical question he poses to the vocational expert. The ALJ should also address the third party statements of Ms. Carr.

**ORDER**

        The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

        LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 16, 2008

                                                    _____/s/_____
                                                    JENNIFER T. LUM
                                                    UNITED STATES MAGISTRATE JUDGE